IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-633-BO

| | |
|---|---|
| STATE OF NORTH CAROLINA, by and through its agency, the NORTH CAROLINA DEPARTMENT OF ADMINISTRATION,<br>    Plaintiff,<br><br>and<br><br>YADKIN RIVERKEEPER, INC.,<br>    Plaintiff-Intervenor,<br><br>v.<br><br>ALCOA POWER GENERATING, INC.,<br>    Defendant. | ORDER |

This cause comes before the Court on the State's motion to remand. A hearing was held on this matter before the undersigned on November 14, 2013, at Raleigh, North Carolina. For the reasons discussed below, the State's motion is denied.

## BACKGROUND

The State filed this declaratory judgment action in Wake County Superior Court seeking a declaration that, *inter alia*, roughly thirty-eight miles of submerged riverbed in the Yadkin River is the sole and exclusive property of the State of North Carolina, held by the State in trust for the people of the State. Alcoa Power Generating (Alcoa) removed the action to this Court on the basis of its federal question jurisdiction. 28 U.S.C. §§ 1331; 1441. The State contends that its well-pleaded complaint contains no federal question. The State further contends that the Eleventh Amendment would bar removal of this case from state court, and that, should the Court find that it has jurisdiction to consider this matter, the Court should abstain as important state

interests have been implicated and there would be an adequate opportunity to present any federal claims in the state court proceeding.

## DISCUSSION

I. REMAND IS NOT REQUIRED

Removal of a civil action from state court is only proper where the federal district courts would have original jurisdiction, 28 U.S.C. § 1441, and it is the burden of the removing party to show that jurisdiction lies in the federal court. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc). Removal jurisdiction must be construed strictly in light of federalism concerns, and if jurisdiction in the federal district court is determined to be doubtful, remand is required. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Generally, whether this Court has federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Even in the absence of a pleaded federal question, however, a claim will be considered to arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

While there is no federal question presented on the face of the State's complaint, a declaration of judgment under state law that the State of North Carolina owns the portions of the Yadkin River bed at issue necessarily turns on construction of federal law. As the State has alleged in its complaint, in order to resolve the question of ownership, the question of whether

2

the relevant portions of the riverbed were navigable at the time of statehood must first be decided. Cmp. ¶¶ 27-28.

It is undisputed that "when the revolution took place, the people of each state became themselves sovereign; and in that character hold the absolute right to all their navigable waters, and the soils under them . . .." *Martin v. Waddell's Lessee*, 41 U.S. 367, 410, 10 L. Ed. 997 (1842). Accordingly, as one of the original thirteen states, North Carolina held absolute right to its navigable waters and the soils beneath them upon its declaration of independence from Great Britain. What remains to be decided in this matter is whether the subject waterway was *navigable* when the State declared its independence. As has been recently made plain, "questions of navigability for determining state riverbed title are governed by federal law." *PPL Montana, LLC v. Montana*, 132 S. Ct. 1215, 1227 (2012).

The State contends that the Supreme Court's holding in *PPL Montana* applies not to the original thirteen but only to the later-admitted thirty-seven states whose ownership of navigable waters is determined under the equal footing doctrine. The equal footing doctrine provides that states newly admitted to the Union hold the same rights as sovereign to the submerged beds of their navigable waterways as did the original thirteen. *United States v. Alaska*, 521 U.S. 1, 5 (1997) (citing *Lessee of Pollard v. Hagan*, 3 How. 212, 228–229 (1845)); *see also Massachusetts v. New York*, 271 U.S. 65, 89 (1926) (principle derived from English common law that sovereign holds title to soil under navigable waters is equally applicable to the original thirteen states and states later admitted).

Because the later-admitted states are in fact co-equal sovereigns under the Constitution to the original thirteen, *see e.g. Pollard,* 44 U.S. at 228, there is no basis upon which to suppose that the equal footing doctrine requires any difference in treatment as between the states when

3

deciding questions of navigability for determining riverbed title. That North Carolina is one of the original thirteen as opposed to one of the thirty-seven non-original states subject to the equal footing doctrine is thus of no consequence, as the question to be decided here remains, and would be in either instance, whether the subject waterway was navigable when North Carolina became sovereign.

*Corvallis Sand* does not require this Court to find otherwise. In *Corvallis Sand*, the Supreme Court held that once title is vested in a state under the equal footing doctrine, "the force of that doctrine [is] spent" and subsequent questions of title are then matters of state law. *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 371 (1977). Here, the question of whether title to the relevant portions of riverbed *ever* vested with the State remains to be decided. *Corvallis Sand* is thus inapposite and does not require that state law be applied to determine title. As to the State's reliance on an 1885 state statute regarding its ownership of the Yadkin River bed, states "may [not] adopt a retroactive rule for determining navigability which would [serve] to enlarge what actually passed to the State . . . ." *PPL Montana*, 132 S. Ct. at 1235.

As the State has not demonstrated that this Court's federal question jurisdiction is doubtful, and because the State's action necessarily requires construction of federal law, removal of this action was appropriate and remand is not required.

II. THE ELEVENTH AMENDMENT IS NOT A BAR TO REMOVAL

The State next relies on the Eleventh Amendment to resist removal. While the Eleventh Amendment protects states from being haled into court as defendants without their consent, "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction."

*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 844-48 (9th Cir. 2004) (thoroughly discussing the intersection of state sovereign immunity and removal jurisdiction and listing cases holding same); *see also Com. of Va. ex rel. Kilgore v. Bulgartabac Holding Grp.*, 360 F. Supp.2d 791, 796 (E.D.Va. 2005) (same).

While the Court is aware of no binding authority in this circuit reaching the same conclusion, it is aware of nothing that would cause it to reach a contrary one. As noted by Alcoa, the State's reliance on *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), in arguing that the Eleventh Amendment causes removal to be improper is misplaced; *Coeur d'Alene* is inapposite here as the Supreme Court in that matter addressed itself to deciding whether the Eleventh Amendment barred a federally recognized Indian tribe from bringing suit *against* a state, not whether an action brought by a state may be removed to federal court. Thus, in light of the persuasive authority from other circuits, the Court holds that the Eleventh Amendment cannot operate to shield the State from a suit that it commenced in order to defeat Alcoa's proper removal.

### III. *YOUNGER* ABSTENTION IS NOT APPROPRIATE

Finally, the State asks that if the Court finds that remand is not required that it abstain from considering this matter under the principle announced in *Younger v. Harris*, 401 U.S. 37 (1971). In order for *Younger* abstention to be appropriate, there must be an ongoing state judicial proceeding, the proceeding must implicate important state interests, and there must be an adequate opportunity to present the federal claims in the state proceeding. *Employers Res. Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995).

Where a case has been removed from state court, the state court has lost its jurisdiction over the matter. *Bryan v. BellSouth Communications, Inc.*, 492 F.3d 231, 240-41 (4th Cir. 2007).

5

Thus, as there is no ongoing state judicial proceeding here, the first requirement of *Younger* fails to be satisfied and abstention would be wholly inappropriate. *See also Kilgore*, 306 F. Supp.2d at 797. The State's request that the Court abstain under *Younger* is denied.

### CONCLUSION

For the foregoing reasons, the State's motion to remand and in the alternative for abstention [DE 23] is DENIED.

SO ORDERED, this **07** day of November, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE