IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-633-BO

STATE OF NORTH CAROLINA, by and )
through its agency, the NORTH )
CAROLINA DEPARTMENT OF )
ADMINISTRATION, )
   Plaintiff, )
             ) **ORDER**
v. )
)
ALCOA POWER GENERATING, INC., )
   Defendant. )

This matter is before the Court on defendant's motion for summary judgment [D.E. 77] and plaintiff's motion for partial summary judgment [D.E. 58]. The Court held a hearing on these matters on October 29, 2014, in Raleigh, North Carolina at 2:00 p.m. For the reasons stated herein, defendant's motion is DENIED and plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The availability of clean water and affordable power sources is critical to the welfare of Twenty-First Century America. At its core, this case highlights the importance of these two vital resources. The Yadkin River provides drinking water for over 700,000 North Carolinians, Yadkin Riverkeeper, http://yadkinriverkeeper.org (last visited November 19, 2014), and the dams on the subject waterway provide nearly 215 megawatts of electricity, Alcoa Power Generating, Inc., Yadkin Division, http://www.alcoa.com/yadkin/en/info_page/hydropower.asp (last visited November 19, 2014). Within this framework of clean water and affordable power arise questions of title—how the law treats title both now and historically.

The State of North Carolina ("North Carolina" or "the State") filed this declaratory judgment action in Wake County Superior Court seeking a declaration that, *inter alia*, roughly forty miles of submerged riverbed in the Yadkin River ("the subject waterway") is North Carolina's sole and exclusive property, held by the State in trust for the people of the State. Alcoa Power Generating ("Alcoa") removed the action to this Court on the basis of its federal question jurisdiction. 28 U.S.C. §§ 1331; 1441. Now before the Court are Alcoa's motion for summary judgment and the State's motion for partial summary judgment.

## DISCUSSION

I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). An issue is "genuine" if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cox*, 249 F.3d at 299. The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–23. Once a motion for summary judgment is properly made and supported, the non-moving party bears the burden of production of evidence that creates an issue of material fact on an element essential to his case and on which he will bear the burden of proof at trial. *Id.* at 323. A non-movant "may not rest upon mere allegations or denials," but rather must demonstrate that a triable issue of material fact exists. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The Court first considers the claims on which Alcoa alone has moved for summary

2

judgment, then the cross-motions for summary judgment, and last, the claims on which North Carolina alone has moved for summary judgment.

II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Alcoa moves for summary judgment on its claim that the relevant segment of the Yadkin River is non-navigable. As explained in the Court's order denying remand [D.E. 34], the particular issue here is whether the subject waterway was navigable when North Carolina became sovereign. It is axiomatic that "[s]tates, in their capacity as sovereigns, hold title to the beds under navigable waters . . . ." *PPL Montana, LLC v. Montana*, 132 S.Ct. 1215, 1226 (2012). As the Supreme Court recently clarified in *PPL Montana*, "questions of navigability for determining state riverbed title are governed by federal law." *Id.* at 1227. The federal test for navigability was originally laid out in *The Daniel Ball*, 77 U.S. 557 (1871) and states:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary conditions, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.

*Id.* at 563. Courts do not consider the navigability of the entire river, but instead "consider[] the river on a segment-by-segment basis to assess whether the segment of the river, under which the riverbed in dispute lies, is navigable or not." *PPL Montana*, 132 S.Ct. at 1229. Navigability "involve[s] questions of law inseparable from the particular facts to which they are applied," and navigability of a particular river "is, of course, a factual question." *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 404–05 (1940).

Here, Alcoa argues that, at statehood, the subject waterway was clearly non-navigable. The issue of navigability at statehood, however, is not as straightforward as Alcoa's arguments imply. Both parties have submitted evidence in support of their positions, but the evidence is

3

predominantly limited to the 19th century, well after statehood. *See, e.g.,* D.E. 86–2, D. Morrill Declaration; D.E. 84–2, Harvey Report at 11–12; Douglas L Rights, *A Voyage Down the Yadkin-Great Peedee River*, 25–60 (1929). Alcoa's evidence also focuses heavily on the lower portions of the subject waterway. *See, e.g.,* D.E. 84–2, Harvey Report at 4, 25–29, 30–33 (discussing non-navigability near the current location of the Falls Dam and the Narrows Dam), D.E. 86-2, Morrill Declaration at 47–50 (focusing on the difficulty of crossing the portion of the river where the Narrows Dam is now located). While Alcoa highlights the State's prior representations that the subject waterway was non-navigable as evidence thereof, pursuant to Federal Rule of Evidence 201(b)(2), the Court also takes judicial notice, pursuant to Federal Rule of Evidence 201, of Alcoa's representation that the subject waterway was navigable in *United States of America v. Aluminum Company of America,* 44 F.Supp. 97, 102 (S.D.N.Y. 1941).[1] There are conflicting accounts of the subject waterway's navigability, and it would be unwise to give controlling weight to either party's prior arguments in adversarial, partisan proceedings.

Court decisions are similarly inconclusive. Alcoa relies on a North Carolina Supreme Court decision finding that "the river Yadkin is not a navigable stream, *at or near the place where the defendant's dam was built.*" *State v. Glen*, 52 N.C. 321, 325 (1859) (emphasis added). In that case, however, the defendant's dam was built on the Yadkin River near Enon, North Carolina, many miles north of the subject waterway. Additionally, the Federal Energy Regulatory Commission concluded in 1980 that the subject waterway was navigable. 12 FERC ¶ 62053 (July 28, 1980). More recently, the North Carolina Court of Appeals noted the navigability of the Yadkin River in *dicta. See Bauman v. Woodlake Partners, LLC,* 681 S.E.2d

---

[1] Alcoa's prior representation that the subject waterway was navigable is a judicially noticeable fact. It "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

4

819, 826 (N.C. Ct. App. 2009) (noting that if it adopted a rule that a dam's interruption of navigability would render a river non-navigable at law, "many of the major rivers in North Carolina, such as the Catawba and the Yadkin, would become non-navigable, which would be a troubling result.").

It is indisputable that Alcoa has submitted a larger quantity of evidence on this issue, but the quantity of evidence alone is not controlling. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) (explaining that both the quality and quantity of evidence should be considered at summary judgment). The controlling question is whether an issue of material fact exists as to the subject waterway's navigability. Although navigability itself is a question of law, it is highly dependent on the facts, and where, as here, the facts are in dispute, the Court cannot find that the river was non-navigable as a matter of law. Given the timeframe of and conflicts in the evidence, the inconsistencies in cited court proceedings, and the incongruity of the parties' prior representations as to the subject waterway's navigability, the Court finds that a genuine issue of material fact exists as to the subject waterway's non-navigability, and defendant's motion for summary judgment on the issue of non-navigability is DENIED.

II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

Both Alcoa and North Carolina move for summary judgment on the issues of adverse possession and waiver.

A. Adverse Possession

Both parties agree that North Carolina law controls the issue of adverse possession of the subject waterway. In North Carolina, the beds of non-navigable rivers are susceptible to private ownership, but the State prohibits the acquisition by adverse possession of any exclusive right to use any part of a public way, which has been held to include a navigable stream (*see* N.C. GEN.

5

STAT. § 1–45 (2013); *Lenoir Cnty. v. Crabtree*, 74 S.E. 105, 106–107 (N.C. 1912)). Moreover, title to real property held by the State which is subject to public trust rights, including navigable waterways, may not be acquired by adverse possession. N.C. GEN. STAT. § 1–45.1 (2013). Because the issue of navigability is unsettled, there is a genuine issue of material fact as to whether Alcoa could obtain title to the subject waterway through adverse possession. Accordingly, both parties' motions for summary judgment on the issue of adverse possession are DENIED.

B. Waiver

Alcoa argues that the State, through various representations, waived its right to bring this lawsuit. North Carolina argues that, as a matter of law, waiver is unavailable based on the evidence presented in Alcoa's answer. Waiver arises from "intentional relinquishment or abandonment of a known right or privilege." *Barker v. Wingo*, 40 U.S. 514, 525 (1972) (quotation and citation omitted). Waiver "presupposes that the person to be bound is fully cognizant of his rights, and . . . neglects to enforce them, or chooses one benefit instead of another," and may be express or "implied from acts or conduct," *Danville Lumber & Mfg. Co. v. Gallivan Bldg. Co.*, 97 S.E. 718, 720 (N.C. 1919). The elements of waiver are "(1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage, or benefit." *Fetner v. Rocky Mount Marble & Granite Works*, 111 S.E.2d 324, 328 (N.C. 1959).

On the issue of express waiver, Alcoa relies on two permit agreements between Alcoa and the North Carolina Department of Transportation ("NCDOT") containing what appears to be boilerplate language that the NCDOT "will not assert or attempt to assert or to claim any of the project lands or waters, the Yadkin-Managed Buffer or other property rights of Yadkin or Alcoa,

whether or not the use of same is granted in the permit." [D.E. 91 ex. 8]. These permits cannot be read to explicitly waive North Carolina's right to assert and enforce its ownership rights in the subject waterway. The agreements did not delineate ownership of property, but merely stated that North Carolina could not claim title to any of Alcoa's land as a result of the permitted use. The permits provide no evidence that North Carolina intended to relinquish its right to challenge ownership of the property at issue in this case, particularly given that the NCDOT lacks the authority to do so. *See* N.C. Gen. Stat. § 146–76 (limiting North Carolina's ability to dispose of land to those methods prescribed by statute).

Alcoa also argues that North Carolina impliedly waived its right to bring this lawsuit via its prior representations in 1937 and 1956 Federal Power Commission ("FPC") proceedings. In the 1937 proceeding, North Carolina argued that the Yadkin river was non-navigable for purposes of interstate commerce and therefore beyond the reach of federal jurisdiction on the basis of the Commerce Clause. [D.E. 89-3 at 14]. Ownership of the property was not at issue in the 1937 proceeding, and Alcoa points to no evidence or language in that proceeding that North Carolina intended to relinquish, or indeed, did relinquish any ownership right to the subject waterway. In the 1956 proceeding, Alcoa relies upon a single sentence in North Carolina's brief as intervenor stating that "[s]o far as this phase of the case is concerned, North Carolina adopts the evidence of the applicants and exhibits filed in support of same." [D.E. 90-4 at 3]. One of the applicants was Alcoa's predecessor, Carolina Aluminum Company, and one of its exhibits stated that it owned all the land for the High Rock, Narrows, and Falls Developments and approximately 60 percent of the land for the Tuckertown development. [D.E. 90-3 at 30]. Again, ownership of property was not at issue in the 1956 proceeding. Moreover, it strains credibility to believe that such an attenuated representation—a single sentence in a brief as intervenor that

7

exhibits, only one of which discusses ownership of the property at issue in this case—could be interpreted as the State waiving its right to challenge the riverbed's ownership. The evidence relied upon by Alcoa is so attenuated that no jury could reasonably believe that North Carolina's representations in the FPC proceedings constituted an implied waiver. Because there is no genuine issue of material fact as to the issue of waiver, plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED.

III. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

North Carolina moves for partial summary judgment on its claims that (1) it has made out a prima facie case of ownership of the subject waterway; (2) Alcoa cannot show valid title to a number of parcels within the subject waterway; (3) the equitable doctrines of easement by estoppel, use, or consent, prescriptive easement, estoppel and laches are unavailable to Alcoa.

A. Prima Facie Case

North Carolina argues that it has made out a prima facie case of ownership of the riverbed, and the burden shifts to Alcoa to demonstrate valid title. North Carolina law provides:

> [i]n all controversies and suits for any land to which the State . . . shall be a party, the title to such lands shall be taken and deemed to be in the State . . . until the other party shall show that he has a good and valid title to such lands in himself."

N.C. GEN. STAT. § 146–79. Alcoa does not address this statute in its response, instead reiterating its arguments as to the subject waterway's non-navigability. While the Court recognizes that the issue of navigability bears on North Carolina's ability to convey title to the subject waterway, there is no genuine issue of material fact with regard to the State's prima facie ownership of the riverbed, given the North Carolina statute on point. As such, the State's motion for summary judgment on this issue is GRANTED. For purposes of the title inquiry, the State has made out a prima facie case of ownership of the riverbed, and Alcoa has the burden of proving valid title at

8

trial. This ruling in no way impacts the issues of navigability, adverse possession, and any remaining affirmative defenses, which will also be taken up at trial.

B. Title

North Carolina moves for summary judgment with regard to a number of the chains of title that Alcoa has identified. The State concedes in its motion for summary judgment that its ability to grant title to the subject waterway depends in part on its navigability. [D.E. 92 at 15–20]. *See also Kelly v. King*, 36 S.E.2d 220, 223 (N.C. 1945) ("While the general rule is that a description of land as bordering on a *nonnavigable* stream carries to the thread of the stream, this is rebutted by words which clearly restrict the grant to the edge or shore of the stream.") (internal citation omitted) (emphasis added). Because North Carolina's ability to convey title to the subject waterway depends on the waterway's navigability, which is still an open question, summary judgment is inappropriate at this stage. Moreover, the connected chain of title inquiry is an extraordinarily fact-intensive one, involving thousands of documents, hundreds of properties, and decades of history. North Carolina's *amicus*, the Riverkeeper, even states that "the question of chain of title is a disputed issue of material fact." [D.E. 94-6 at 3]. The fact-specific nature of the chain of title inquiry makes it thoroughly inappropriate for summary judgment, particularly given that North Carolina's evidence does not demonstrate that Alcoa lacks valid title, but simply notes that either title is "presumed" to be with North Carolina or Alcoa's chain is "questionable." [D.E. 63, Seay Affidavit]. Because there is quite clearly a genuine issue of material fact as to chain of title inquiry, plaintiff's motion for summary judgment on this issue is DENIED.

C. Equitable Defenses

Plaintiff argues that it is entitled to summary judgment on Alcoa's affirmative defenses of easement by estoppel, use, or consent, prescriptive easement, estoppel, and laches.

1. *Easement by Estoppel, Use, or Consent*

To establish an easement by estoppel, a party must demonstrate that "one cognizant of his own right keeps silent in the knowledge that another will be innocently and ignorantly induced to . . . expend money or labor in reliance on the existence of such an easement." *Woodring v. Swieter*, 637 S.E.2d 269, 279–80 (N.C. Ct. App. 2006) (internal citations and quotations omitted). To establish an easement by prior use, a party must prove that: (1) there was a common ownership of the dominant and servient parcels and a transfer that separated ownership; (2) before the transfer, the owner used part of the tract for the benefit of the other part, and that this use was apparent, continuous, and permanent; and (3) the claimed easement is necessary to the use and enjoyment of the claimant's land. *Id.* at 278. No evidence has been produced that North Carolina misled or induced Alcoa to believe the State relinquished its ownership rights in the subject waterway nor is there evidence of common ownership of the riverbed and a severance thereof. Consequently, there is no genuine issue of material fact as to this affirmative defense, and plaintiff's motion for summary judgment on the affirmative defense of easement by estoppel, use, or consent is GRANTED.

2. *Prescriptive Easement*

To establish an easement by prescription, the use must be (1) adverse, hostile, or under a claim of right; (2) open and notorious; (3) continuous and uninterrupted for a period of 20 years; and (4) there must be substantial identity of the easement claimed. *Woodring*, 637 S.E.2d at 276. North Carolina argues that Alcoa and its predecessors have been authorized to use the Yadkin

River for generation of hydroelectric power. D.E. 90–14, *An act to incorporate the Yadkin River Power Company*, 1897 N.C. Sess. Law ch. 236 (1897). Alcoa argues that the Act in fact authorized its predecessor to purchase or condemn private property, not to use state-owned property. The Court has reviewed the Act, and without deciding whether the use was hostile or not, the Court finds that Alcoa has put forth sufficient evidence to show that there is a genuine issue of material fact as to the hostility of the use. Accordingly, plaintiff's motion for summary judgment on the affirmative defense of prescriptive easement is DENIED.

*3. Equitable Estoppel*

Generally, estoppel is an equitable remedy that "precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity. *Woodring*, 637 S.E.2d at 279. "The party seeking to invoke the doctrine of equitable estoppel must plead facts sufficient to raise an issue as to its application." *Friedland v. Gales*, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998). The essential elements of equitable estoppel are:

> (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

*Gore v. Myrtle/Mueller*, 653 S.E.2d 400, 408 (N.C. 2007) (citation omitted). Alcoa bases its estoppel defense on North Carolina's statements in the aforementioned 1937 and 1956 FPC proceedings. *See supra*, p.7. In these cases, North Carolina argued that the Yadkin River was non-navigable for purposes of interstate commerce and therefore beyond the reach of federal jurisdiction on the basis of the Commerce Clause. [D.E. 89-3 at 14, D.E. 90, D.E. 90-3 at 3]. It is clear that North Carolina did not falsely represent or conceal material facts, as the two definitions

11

of navigability—there, for Commerce Clause jurisdiction and here, for title—are different. *See* 16 U.S.C. § 796(8) (defining navigable waters for purposes of the Federal Power Act); *PPL Montana v. Montana*, 132 S.Ct. 1215, 1228–29 (2012) (discussing the differences in application of the tests for navigability of waterways). Moreover, as discussed *supra*, p. 7, Alcoa has introduced no evidence that North Carolina intended to convey title to the bed of the relevant segment. As such, there is no genuine issue of material fact as to estoppel, and plaintiff's motion for summary judgment on Alcoa's affirmative defense of estoppel is GRANTED.

*4. Laches*

Laches is an equitable defense which can limit or bar certain claims. *Teachey v. Gurley*, 199 S.E. 83, 88 (N.C. 1938). In North Carolina, laches applies where 1) a delay in time resulted in a change in the condition of the property or in the relations of the parties; and 2) the delay was unreasonable and worked to the disadvantage or prejudice to the party seeking to invoke the doctrine. *MMR Holdings, LLC v. City of Charlotte*, 558 S.E.2d 197, 198 (N.C. Ct. App. 2001). "The mere passage or lapse of time is insufficient to support a finding of laches . . . ." *Taylor v. City of Raleigh*, 227 S.E.2d 576, 584–85 (N.C. 1976) (internal quotation and citation omitted).

North Carolina first relies upon the doctrine of *quod nullum tempus occurit reg* to argue that state governments are exempt from the defense of laches, and then argues that courts cannot apply laches to claims for a declaratory judgment for title to real property. The State's claims fail as a matter of law. North Carolina courts have applied laches against state actors. *See, e.g., Abernethy v. Town of Boone*, 427 S.E.2d 875, 879 (N.C. Ct. App. 1993); *Town of Cameron v. Woodell*, 563 S.E.2d 198, 201–02 (N.C. Ct. App. 2002). Additionally, both federal and state courts have applied laches to declaratory judgment claims involving real property interests. *See, e.g., Taylor*, 227 S.E.2d at 584; *Abbott Labs. v. Gardner*, 387 U.S. 1365, 155 (1967).

12

While North Carolina claims that it acted with reasonable diligence and Alcoa suffered no injury, Alcoa presented evidence that it invested tens of millions of dollars on the dams, among other expenditures, on the belief that it owned the subject waterway as a result of the State's conduct. Accordingly, the State fails to demonstrate that there is no issue of material fact as to the affirmative defense of laches, and its motion for summary judgment on this affirmative defense is DENIED.

## **CONCLUSION**

For the aforementioned reasons, defendant's motion for summary judgment [D.E. 77] is DENIED, and plaintiff's motion for partial summary judgment [D.E. 58] is GRANTED IN PART as to the issues of its prima facie case, waiver, easement by estoppel, use, or consent, and estoppel, and DENIED IN PART in regard to the remaining grounds. The parties are instructed to be ready for trial by January 15, 2015, and the Court will set a trial date by later order.

SO ORDERED, this 20 day of November, 2014.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE